```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
                    FORT WORTH DIVISION
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO.4:00-CR-260-Y |
| | § | (CIVIL NO.4:04-CV-346-Y) |
| JOHN TURNER    (8) | § | |

<u>ORDER GRANTING RELIEF ON REMAINING CLAIM UNDER 28 U.S.C. § 2255,
   VACATING SENTENCE and, SETTING HEARING ON RE-SENTENCING</u>

On May 2, 2007, the Court held a hearing on defendant John Turner's remaining claim under 28 U.S.C. § 2255 that his counsel provided him ineffective assistance by failing to adequately advise him of all facts and law relevant to his decision to plead not guilty ("the remaining ineffective-assistance claim"). Turner was represented during the pre-trial and trial proceedings in this matter by his then attorney, Darrell F. Brown. (May 2, 2007, § 2255 Hearing Transcript (Tr.) at 5.)

At the hearing on the remaining ineffective-assistance claim, Turner appeared with the assistance of appointed counsel.  In addition to Turner's testimony, the Court heard the testimony of Assistant United States Attorney Fred Schattman, the attorney who prosecuted Turner.  Brown did not appear, and has not submitted any declaration or affidavit in this proceeding.  Government counsel told the Court that the government was unable to locate Brown for the § 2255 hearing. (Tr. 62.) After conducting the hearing; reviewing the exhibits admitted during the hearing, the government's post-hearing brief, and Turner's response in opposition; and after considering the applicable law and the records of this case, the Court concludes that Turner is entitled to relief under 28 U.S.C. § 2255 on the remaining ineffective-assistance claim.

Turner's remaining ineffective-assistance claim is based upon three allegations: that counsel failed to advise Turner that he could plead guilty with or without a plea agreement, that he could have proceeded to a bench trial on stipulated facts,[1] and that if he entered a timely guilty plea, he could obtain up to a three-level reduction in his total offense level under United States Sentencing Guideline ("USSG") § 3E1.1 for "acceptance of responsibility." To determine whether counsel was constitutionally ineffective under the Sixth Amendment, this Court must apply the familiar, two-pronged deficiency-and-prejudice standard from *Strickland v. Washington*.[2] The *Strickland* test applies to the advice given by counsel in the context of guilty-plea discussions and potential sentence exposure.[3]

In the context of a plea decision, the deficiency test focuses on whether the attorney's conduct was within the range of

---

[1]Although there was testimony from Turner on his misunderstanding of any plea to stipulated facts, this ineffective-assistance claim is resolved on the other two aspects.

[2]*Strickland,* 466 U.S.668, 687 (1984)

(First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.)

[3]*Hill v. Lockhart,* 474 U.S. 52, 58 (1985); *see United States v. Grammas,* 376 F.3d 433, 436 (5th Cir. 2004); *United States v. Ridgeway,* 321 F.3d 512, 514 (5th Cir. 2003); *see also United States v. Walder,* Nos.3-99-CR-185-T, 3-02-CV-237-G, 2002 WL 1906205, at *1 (N.D.Tex. Aug. 14, 2002)(noting that claim that counsel's advice to plead not guilty was constitutionally inadequate analyzed under *Strickland*).

competence demanded of attorneys in criminal cases.[4] The prejudice prong in the context of the plea process requires scrutiny on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process."[5] In the specific instance where a defendant has gone to trial rather than enter a plea, to establish prejudice, the defendant must show that he would have accepted a plea but for counsel's advice, and that had he done so he would have received a lesser sentence.[6]

*Deficiency*

Resolution of whether attorney Brown was deficient in his plea discussions with Turner must take account of whether Turner understood the law and its application to the facts sufficiently to make an informed and conscious choice regarding whether to plead guilty.[7] Educating Turner as to the relevant law would have

---

[4] *Hill*, 474 U.S. at 52, *citing Tollett v. Henderson*, 411 U.S. 258 (1973) and *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *see Grammas,* 376 F.3d at 436 (§ 2255 movant must show that counsel's performance fell below an objective standard of reasonableness); *see also James v. Cain*, 56 F.3d 662, 667 (5th Cir.1995) (noting that to satisfy the deficiency prong in the plea-bargaining arena, [petitioner] must establish that his trial counsel's performance fell below an objective standard of reasonable competence)(citations omitted).

[5] *Hill,* 474 U.S. at 370.

[6] *See Grammas,* 376 F.3d at 438; *see also Wanatee v. Ault,* 259 F.3d 700, 703 (8th Cir. 2001)*citing, Engelon v. United States,* 68 F.3d 238, 241 (8th Cir. 1995); *United States v. Booth*, 432 F.3d 542, 546 (3rd Cir. 2005)(defendant must show that, but for counsel's ineffectiveness, he would have received a lower sentence).

[7] *See generally Grammas,* 376 F.3d at 436; *see also Canales v. Quarterman*, No.Civ. A. C-06-266, 2007 WL 412172, at *5-6 (S.D.Tex. Feb. 1, 2007).

> "The Fifth Circuit has established that with respect to a guilty plea, counsel "must actually and substantially assist his client in deciding whether to plead guilty ... [and] provide the accused an 'understanding of the law in relation to the facts.' " Herring v. Estelle, 491 F.2d 125, 128 (5th Cir.1974) (citations omitted); see also Pollinzi v. Estelle, 628 F.2d 417, 419 (5th Cir.1980) (per curiam) ("Where a defendant pleads guilty, counsel's responsibility is to determine whether the plea is entered voluntarily and

included, at a minimum, an analysis of the statutes Turner was charged with violating, and an analysis of the sentencing guidelines and how those guidelines would have applied to Turner if he had proceeded to trial versus if he had pleaded guilty. Over the course of his representation, although Brown sent several letters to Turner, none of that correspondence included any explanation of how the sentencing guidelines were structured or how they might apply to Turner's specific case. (Tr. 22.) Although Brown met with Turner on several occasions, most of the meetings were brief and perfunctory.[8] Turner testified that he first learned of the sentencing guidelines only from fellow inmates (Tr. 12-13), and that Brown did not mention the guidelines to him until the meeting on the Friday before his scheduled trial. (Tr. 13.) Even then, counsel Brown did not explain a sentencing guideline calculation, but told Turner only that if he were found guilty, he would be facing at least 20 years. (Tr. 14.) With regard to discussion of a potential plea bargain, Turner testified that Brown

---

knowingly, ... to assist his client actually and substantially in deciding whether to plead guilty, ... to provide the accused with an understanding of the law in relation to the facts, ... and to give advice that permits the accused to make an informed and conscious choice.") (citations omitted).

[8]Turner testified that he saw Brown only a few times prior to the day of trial, just briefly after the detention hearing (Tr. 5); for "two or three" minutes after the arraignment where there was "no substantive discussion" of the charges (Tr. 6); a 30-45 minute meting a few weeks later which did include a discussion of the "whole nature of the case," but did not include discussion of any specifics of range of punishment (Tr. 6-7); a post-suppression hearing meeting for a "few short minutes," which did not include any substantive review of his case (Tr. 8); a five minute meeting post-arraignment on the superseding indictment (Tr. 9); and two meetings on the Friday before trial scheduled on the next Monday (Tr. 10.)

4

told him that there was not going to be a plea bargain and he could not take a plea because [Turner] was not offered a plea agreement. (Tr. 14, 15.) Brown never discussed with Turner the option of pleading guilty without a plea agreement (Tr. 14, 15), and never mentioned or explained the phrase "going open." (Tr. 15.) Brown advised Turner to waive a jury trial, and to proceed to trial before the Court on "stipulated facts;" which Turner understood to mean that he was not going to have a full trial, but only a presentation by the government of certain evidence. (Tr. 16.) Turner testified that Brown did not discuss acceptance of responsibility until the Friday before trial. (Tr. 18.) Turner testified that Brown told him that "even if I did get offered a plea, that I would not get the acceptance-of-responsibility points because it was so late in the process of my case." (Tr. 19.) Turner understood the discussion to mean that "if [I] pled guilty, I would not get any acceptance points off for anything." (Tr. 19.)

    Review of this testimony leads to the conclusion that counsel Brown was deficient in not adequately advising Turner of the law applicable to his options to go to trial or to plead guilty without a plea agreement. Counsel did not adequately explain the guidelines to Turner, and did not show Turner how the guideline imprisonment range would be different if he went to trial as opposed to entering a guilty plea. Brown did not even discuss with Turner the option of entering a plea without a plea agreement. Brown did not timely discuss with Turner the option of entering a plea to be eligible for a lesser sentence because of his acceptance of responsibility. Because Brown did not adequately inform Turner of the sentencing

5

consequences of deciding to plead guilty versus going to trial, Brown's performance was deficient.[9]  Turner has satisfied the first prong of the *Strickland* test.[10]

*Prejudice*

The government argues, with citation only to *Strickland,* that as a part of the prejudice inquiry, Turner must show that but for the deficient advice of counsel he probably would have pleaded guilty.  Under controlling circuit authority, the prejudice inquiry includes two components: whether the defendant would have pleaded guilty, and if so, whether he would have received a lesser sentence.[11]  The first question, then, is whether Turner would have pleaded guilty.  This is a question of fact.[12]

Turner acknowledged at the § 2255 hearing that prior to trial he insisted on his innocence.  (Tr. 23.)  The government argues that

---

[9] The Court notes that Brown has been disbarred from engaging in the practice of law by the Supreme Court of Arkansas. (Turner Exhibits 1-3); *In re Darrell F. Brown,* No.05-592, 2007 WL 700976 (Ark. March 8, 2007).

[10] *See Hill,* 474 U.S. at 62 (White, J. concurring)("The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis . . . as such an omission cannot be said to fall within the 'wide range of professionally competent assistance' demanded by the Sixth Amendment")(citation omitted).

[11] *See Grammas*, 376 F.3d at 438

> ("Whether there was a reasonable probability that, but for [counsel's] actions, [defendant] would have received a lesser sentence than he did turns on first, whether [defendant] would have pleaded guilty if he [had known] of the true criminal penalty he faced, and second, whether a guilty plea would have indeed reduced [defendant's] sentence").

*see generally Wannatee v. Ault,* 259 F.3d at 703-04, *citing Engelen v. United States*, 68 F.3d 238, 241 (8th Cir.1995)("To establish prejudice under [instance where counsel rejects plea due to improper advice], the petitioner must show that he would have accepted the plea but for counsel's advice, and that had he done so he would have received a lesser sentence"); *see United States v. Hernandez,* 450 F.Supp. 2d 950, 975 (N.D.Iowa 2006).

[12] *Grammas*, 376 F.3d at 438; *see also Wanatee,* 259 F.3d at 704.

Turner's § 2255 papers support his unwillingness to plead guilty because Turner asserted, as a part of a separate ineffective-assistance claim based on counsel's interference with his right to testify, that he "would have taken the witness stand and directly rebutted the allegations of the indictment and the prosecution's evidence." (§ 2255 Mot. at 4,¶ D, Amend. Mot. at 5, ¶ D.) The government also points to defense counsel Brown's letters to prosecutor Schattman stating that Turner continued to "maintain his innocence." When asked at the § 2255 hearing whether such letters supported Turner's profession of innocence, however, Schattman noted that "during the course of my discussions with Mr. Brown on several occasions, he had indicated to me that Mr. Turner had no desire to be, as he said, a snitch." (Tr. 48.) As a part of the same answer the prosecutor noted:

> The letters reflect some of the discussions, or areas of discussions, that I had with Mr. Brown.  This was a very serious case in my view.  It was a case in which--there were no plea offers that did not involve cooperation. If anyone wanted to plead to something less than the entire indictment, then they were going to have to cooperate with the government. If they didn't, they could go to trial.  They could plead guilty to the entire indictment, and the government would do its best to make its best case for sentencing.

(Tr. 47-48.) But counsel Brown never relayed to Turner the fact that he could plead to the entire indictment without having to cooperate with the government or having to "snitch" on any of his co-defendants. (Tr. 14, 15, 27-28.)

At the hearing on the § 2255 motion, Turner acknowledged that he claimed innocence to his fellow inmates.(Tr. 24.) The government adduced a letter written by Turner while he was awaiting trial, in

7

which he wrote: "I can't see myself taking some time for something I had nothing to do with." (Tr. 25, 31; Gov. Ex. 8.) A second letter included Turner's statement that, although he was willing to plead to gun charges:

> [T]he feds didn't want that plea. So basically I don't have anything to plea to so I have to go to trial. I think it is all a waiting game to see when I will crack and tell on somebody. I know about all that and I've never been that type to snitch on somebody regardless of what they may say about me.

(Gov. Ex. 9.) Turner's response to questioning confirmed that he believed that, in order to enter a guilty plea, he would have to cooperate with the government: "Everybody else that was on my case--they were cooperating with the government, and that's how they were getting pleas. I never debriefed with the government, so, therefore, I never got offered a plea. And I didn't know that you could just take an open plea." (Tr. 27.)

The government makes a persuasive argument that Turner would not have pleaded guilty through the entry of a plea agreement. Both Turner's testimony and the inferential evidence supports such a finding. But that does not resolve the issue of whether Turner would have pleaded guilty to the indictment in a "straight" or "open" plea without a plea agreement. Turner gave direct testimony under oath in the § 2255 hearing that he was guilty of both the marijuana conspiracy and the cocaine conspiracy, and would have pleaded guilty "to the entire indictment" if he "had known he could have taken an open plea." (Tr. 20, 33.) A review of Turner's testimony reveals both that he did not understand that he could

8

plead guilty without a plea agreement, and that if he had understood he would have done so:

Q. When was the first time Mr. Brown discussed with you the possibility of pleading guilty or plea bargaining your case ?
A. He told me there wasn't going to be a plea bargain, that I wasn't offered a plea agreement.
Q. Did he talk to you at all about pleading guilty without a plea agreement?
A. No.  (Tr.14.)


Q. Did he expand on the statement [that you would have to proceed to trial] at all?  Did he offer you any reasons for why?
A. No, because he made the statement that I wasn't going to be offered a plea agreement.  So I couldn't take a plea.
Q. So he never discussed with you pleading guilty without a plea agreement?
A. No. (Tr. 15.)


Q. When was the first time he talked to you about acceptance of responsibility?
A. The Friday before trial.
Q. At that time, that Friday before trial, did you understand or did he explain to you what acceptance of responsibility was?
A. He told me that that's when you take responsibility if you're guilty. And he told me that, even if I did get offered a plea, that I would not get the acceptance of responsibility points because it was too late in the process of my case.
Q. So what did you understand that to mean at that time?
A. That meant that if I pled guilty, I would not get any acceptance points off for anything. (Tr. 18-19.)


Q. So he tells you the government wants you to debrief with them?
A. Correct.
Q. But he didn't give a reason why you should?
A. No.  He told me--he just told me they want to debrief with me, and he said that it would be in my best interest not to.
Q. Did he explain to you why it would be in your best interest not to?
A. He said if I went to trial, took a plea, whatever, if I was offered a plea, that they could use whatever I said against me.  It says that in the Miranda rights.
Q. I'm sorry, It says what?
A. It says that in the Miranda rights.  When I first got arrested, it said, anything I say can and will be used against me.
Q. And he told you that anything you said to the government in a debriefing would be used against you?
A. Yes.  (Tr. 28-29.)

9

```
Q. Do you have any understanding about--well, you were questioned
by counsel for the government about whether you would have snitched
if you had gotten the plea agreement, but do you have any
understanding about whether you would have had to have cooperated,
debriefed, if you had simply entered a guilty plea to all the
counts against you? I'm just asking if you understand that, or what
would have happened if you know?
A. I understand it now.
Q. What's your understanding now as to what--
A. I understand now that you could just make an open plea-I mean,
not open but plead to the charge that you're charged with, and you
wouldn't have to have necessarily debrief with anybody to make a
plea.
Q. But you didn't understand that in 2001?
A. No.
Q. In fact, in 2001, you were under the impression that you had to
have a plea agreement to plead; is that correct?
A. That's correct.  (Tr. 40-41.)

Q. Is it fair to say that you're guilty of the the marijuana
conspiracy that you're charged with in this indictment?
A. Yes.
Q. Would it be fair to say that you were guilty of the cocaine
conspiracy charged against you in this indictment?
A. Yes.
Q. Would you say--well, knowing what you know today and taking into
account all the evidence that you saw that here was against you in
these cases, and particularly understanding about these acceptance
of responsibility points, what if anything would you have done
differently five years ago?
A. I would have pled guilty. (Tr. 20.)
```

Brown never explained to Turner the chance to enter an open plea. Turner did not want to have to provide information or reveal information about any other defendant or potential defendant. But Brown did not explain to Turner that if he were willing to plead to the terms of the entire indictment, he would not have to reveal such information. Turner did not understand that he could have pled guilty without having to "snitch" on anyone.

The Court recognizes that Turner is a convicted felon, and that because record evidence contradicts some of his statements, his veracity is questionable. His testimony at the hearing, however, is direct evidence on the specific point at issue in this

10

proceeding: he would have pled guilty to the terms of the superseding indictment, without a plea agreement, if he had been advised properly. Thus, the Court finds that had Turner been properly advised by counsel, he would have pled guilty without a plea agreement.

But would Turner have received a lesser sentence if he pled guilty?  In a trial to this Court, Turner was found guilty of both conspiracy to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 846, as set out in 21 U.S.C. § 841(a)(1) and (b)(1)(B) (count 1), and conspiracy to distribute and distribution of more than five kilograms of cocaine in violation of 21 U.S.C. § 846, as set out in 21 U.S.C. § 841(a)(1) and (b)(1)(A) (count 2).  As Turner was convicted of distribution of two different drugs, under USSG §2D1.1, comment (n.10), the substances were converted to their marijuana equivalent, which in Turner's case was approximately 2600 kilograms of marijuana. This quantity of marijuana hiked Turner's base offense level to 32.(October 3, 2001, Presentence Report, ¶¶ 153-156, 162-164.) Had Turner pled guilty to both counts of the indictment, the result would have been the same.  The Court also applied an adjustment for Turner's role in the offense under USSG 3B1.1(c) for a total offense level of 34. (PSR, ¶ 167, ¶ 170; December 10, 2001, Sentencing Hearing Transcript at 7.) With Turner's criminal history category of IV, the applicable imprisonment range was 210-262 months, and Turner was sentenced to 262 months on counts 1 and 2, to run concurrently.

Turner, having gone to trial, was not given any sentence reduction for acceptance of responsibility. Had Turner timely

entered a guilty plea under USSG § 3E1.1(a), he would have been eligible for a 2-level reduction for acceptance of responsibility for the offense, and he could have sought an additional 1-level reduction had he "timely notified authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently."[13]

This judge rarely denies the 2-level reduction afforded by guideline § 3E1.1(a) to a defendant who has pled guilty. Thus, as there is a reasonable probability that if Turner had pled guilty the Court would have awarded at least the 2-level reduction under USSG §3E1.1(a),[14] Turner's guideline range would have been calculated upon a base offense level of 32, or possibly lower. With a base offense level of 32, and the same criminal history category of IV, the guideline range would have been 168-210 months. Even assuming a base offense level of 32, and the Court's assessment of a sentence at the top of this range, Turner's sentence would have been 210 months rather than 262 months.

The Court therefore finds that Turner would have received a lesser sentence if he had pled guilty. As any amount of additional time of imprisonment is constitutionally significant for Sixth Amendment purposes,[15] the Court concludes that Turner was prejudiced

---

[13] U.S. SENTENCING GUIDELINE § 3E1.1(b)(2).

[14] Whether Turner would have been eligible for the additional 1 level under §3E1.1(b)(2) is an open issue.

[15] The applicable prejudice test for ineffectiveness relating to the amount of a sentence in the Fifth Circuit used to be whether, but for counsel's actions, there was a reasonable probability that defendant would have received a "*significantly less harsh*" sentence. *See Ridgeway,* 321 F.3d at 515. As a result

12

by Brown's deficient representation, such that he is entitled to relief on the remaining ineffective-assistance claim.

*Remedy*

Section 2255 provides that if a court concludes that "the sentence imposed was not authorized by law or otherwise open to collateral attack," it shall "vacate and set the judgment aside" and shall, among other options, "resentence" the defendant.[16] This Court concludes that § 2255 provides this Court authority to vacate the sentence imposed in the original judgment, and to correct the sentence through a resentencing proceeding.[17] The Court has found that Turner would have accepted a guilty plea but for counsel's advice. Thus, Turner must be resentenced as if he had entered a guilty plea to counts 1 and 2 of the superseding indictment.

In conducting the resentencing of Turner, the Court must also determine which version of the Sentencing Guidelines should apply, and whether the Court must treat those guidelines as advisory under *United States v. Booker*.[18] For disposition of this issue, the Court

---

of the Supreme Court's holding in *Glover v. United States,* 531 U.S. U.S.198, 203 that "*any* amount of actual jail time has Sixth Amendment significance," the Fifth Circuit has now held that "*Glover* abrogates the significantly less harsh test, and that *any* additional time in prison has constitutional significance." *Grammas,* 376 F.3d at 438. *Glover* was decided January 9, 2001, prior to Turner's conviction and sentencing.

[16] 28 U.S.C. § 2255 ¶ 2(West 2006). The Court of Appeals for the Fifth Circuit has held that "granting § 2255 relief entails vacating and setting aside the judgment and choosing one of the proposed remedies." *United States v. West,* 240 F.3d 456, 460 (5th Cir. 2001).

[17] *See Andrews v. United States,* 373 U.S. 334, 339-40 (1963)(noting that relief under § 2255 does not require discharge of the prisoner, but expressly authorizes the vacation of a sentence in order for a defendant to be returned to the district court for resentencing proceedings); *see United States v. Hernandez,* 450 F.Supp. 2d 950, 979-81 (N.D.Iowa 2006)(after finding ineffective assistance of counsel on a § 2255 claim arising from the failure to plead guilty, determining that resentencing is an available remedy).

[18] 543 U.S. 220 (2005).

finds persuasive the consideration and analysis of the identical question by the district court in *United States v. Hernandez:*

> [O]n resentencing as a remedy under § 2255 for a constitutional violation that was *not* premised solely on a "*Booker* violation," it would be inappropriate for the court to apply the Guidelines in a manner that the Supreme Court has determined to be unconstitutional. In this case, the only alleged constitutional violation that the court has found to warrant relief is the "ineffective assistance of counsel" claim based on counsel's failure to advise [defendant] adequately about the benefits and consequences of going to trial versus pleading guilty, either with or without a plea agreement. This claim has nothing whatsoever to do with judicial factfinding during sentencing, and thus, does not implicate *Booker* in any way. Thus, the court must apply the Guidelines as advisory, although the Guidelines that are applicable are otherwise the ones in place at the time that [defendant] was originally sentenced.[19]

Likewise, resentencing in this proceeding results from a determination that Turner's rights to effective assistance of counsel under the Sixth Amendment were violated. Once that Sixth Amendment violation was determined, remedying it at a resentencing proceeding must comport with what is now constitutionally required under *Booker*.[20]

Thus, at the resentencing hearing, the Court will apply the November 1, 2000, edition of the Sentencing Guidelines effective at the time of the original sentencing, but treat those guidelines as advisory under *Booker*. The issues to be resolved at the

---

[19] *Hernandez,* 450 F.Supp 2d at 982.

[20] The Court acknowledges that it already rejected Turner's separate Sixth Amendment claim based upon alleged inappropriate judicial fact-finding under *Booker* as foreclosed by the Fifth Circuit's decision in *United States v. Gentry,* 432 F.3d 600, 601 (5th Cir. 2005) that "*Booker* does not apply retroactively on collateral review to an initial 28 U.S.C. § 2255 motion." Even though the *Booker* holding does not provide a ground for a collateral challenge, once this Court otherwise determined a constitutional violation occurred requiring resentencing, that resentencing must be conducted under the *Booker* Court's determination that, to be constitutional, the guidelines must be treated as advisory.

resentencing hearing are: (1) whether Turner is entitled to a 2-level reduction in the offense level for acceptance of responsibility under USSG § 3E1.1(a); and (2) whether Turner is entitled to an additional 1-level reduction in offense level for acceptance of responsibility under USSG § 3E1.1(b)(2).

Therefore, John Turner's remaining claim for relief under 28 U.S.C. § 2255 is GRANTED, to the extent that the sentence of imprisonment imposed in the December 12, 2001, Judgment in Criminal Case is VACATED, pending this Court's resentencing of Turner. Turner shall remain in the custody of the United States on the same terms as prior to trial until further order of the Court.

A hearing on the resentencing of defendant John Turner is set for Monday June 11, 2007, at 10:30 a.m..[21]

The government shall prepare the paperwork and writs necessary to have defendant John Turner in attendance at the June 11, 2007, hearing.[22]

SIGNED May 23, 2007.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[21] The Court notes that counsel Leigh W. Davis was initially appointed until this Court's resolution of Turner's motion under § 2255.  The Court now expressly orders that under 18 U.S.C. § 3006A(a)-(d), Leigh W. Davis remains appointed to continue to represent John Turner at the re-sentencing, and in any other matters that arise in this proceeding, including any direct appeal to the Court of Appeals for the Fifth Circuit from any amended judgment in this criminal case. A separate CJA 20 will issue.

[22] As of May 21, 2007, it appears John Turner, register number 26394-177 is presently housed at FCI--Fort Worth. *See* www.bop.gov (Last visited May 21, 2007).